IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| S.D. ALEXANDER, INC.,<br>a Florida corporation, | ) ) ) | C.A. No. 04-312-KAJ |
| Plaintiff, | ) ) ) | **PUBLIC VERSION** |
| v. | ) ) | |
| mBLOX, INC.,<br>a Delaware corporation, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT MBLOX, INC.'S OPENING BRIEF**
**IN SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

Matthew F. Lintner (#4371)
Amy A. Quinlan (#3021)
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19899
(302) 888-6800
Attorneys for Defendant mBlox, Inc.

OF COUNSEL

COOLEY GODWARD LLP
Craig Daniel
One Maritime Plaza
20th Floor
San Francisco, CA 94111-3580
(415) 693-2000

Dated: April 22, 2005
Public Version Dated: April 29, 2005

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................. ii

STATEMENT OF NATURE AND STAGE OF PROCEEDINGS ................................... 1

SUMMARY OF ARGUMENT .............................................................. 2

STATEMENT OF FACTS ................................................................ 4

1.    The Parties and the Sales Representative Agreement ............................ 4

2.    The Merger of MobileSys into mBlox and the Termination of the Agreement ..... 6

3.    Plaintiff's Windfall Damages Claim ......................................... 6

ARGUMENT ......................................................................... 9

I.    FOR PLAINTIFF'S BREACH OF CONTRACT CLAIM,
      PLAINTIFF IS ONLY ENTITLED TO DAMAGES UNTIL THE
      END OF THE "THEN CURRENT TERM" OF THE QUALIFIED
      SALES CONTRACTS ............................................................ 9

      A.    Burden of Proof ...................................................... 9

      B.    California Law Requires Unambiguous Contracts to be
            Given Their Plain Meaning ........................................... 10

      C.    The Plaintiff's Agreement with mBlox and the Service
            Contracts Between mBlox and its Customers Unambiguously
            Establish that Plaintiff Is Only Entitled to Commissions Until the
            End of the "Term" of the Qualified Sales Contracts with Clients ...... 11

II.   INTERPRETING THE AGREEMENT AS A WHOLE ESTABLISHES THAT
      PLAINTIFF IS NOT ENTITLED TO COMMISSIONS IN
      PERPETUITY–ANY OTHER OUTCOME WOULD RENDER
      A VARIETY OF PROVISIONS MEANINGLESS ...................................... 18

CONCLUSION ....................................................................... 22

## TABLE OF AUTHORITIES

**CASE**                                                                   **PAGE(S)**

*AIU Ins. Co. v. Superior Court,*
    799 P.2d 1253 (Cal. 1990) ....................................................10

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ...........................................................9

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ...........................................................9

*Waller v. Truck Ins. Exchange, Inc.,*
    900 P.2d 619 (Cal. 1995) .....................................................10

**STATUTES AND OTHER AUTHORITIES**

Fed. R. Civ. P. 56(b) ..............................................................9

Fed. R. Civ. P. 56(c) ..............................................................9

Cal. Civil Code § 1636 ...........................................................10

Cal. Civil Code § 1639 ...........................................................10

Cal. Civil Code § 1641 .....................................................10, 13, 18

Cal. Civil Code § 1644 ...........................................................10

Cal. Civil Code § 3300 ...........................................................10

Cal. Civil Code § 3301 ...........................................................10

Cal. Civil Code § 3358 ...........................................................10

## STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

On May 14, 2004, S.D. Alexander, Inc. ("S.D. Alexander" or "plaintiff"), a Florida corporation, filed a complaint against mBlox, Inc. ("mBlox"), a Delaware corporation. (D.I. 1.)  Plaintiff filed its First Amended Complaint (referred to herein as the "Complaint") on May 17, 2004.  (D.I. 2.)  In its Complaint, plaintiff alleges: 1) fraud in the inducement, 2) fraud and deceit, 3) breach of contract, 4) conversion, and 5) unjust enrichment.  (Complaint ¶¶ 73-98, A24-30.)[1]  On July 9, 2004, mBlox filed its answer. (D.I. 8.)  During discovery, it has become evident that plaintiff intends to seek a windfall damages award to which plaintiff is not entitled.  Therefore, mBlox now moves for partial summary judgment to establish the limits of plaintiff's entitlement to damages. This is mBlox's opening brief in support of its motion for partial summary judgment.

---

[1]     A true and correct copy of the Complaint is attached as Exhibit A of the Affidavit of Thomas Hasler.  (A6.)

## SUMMARY OF ARGUMENT

1.      Based upon the deposition testimony of Scott Alexander, ("Mr. Alexander"), the principal and sole employee of plaintiff S.D. Alexander, Inc., it is evident that plaintiff believes it is entitled to commissions *into perpetuity* on clients Mr. Alexander brought under contract while serving as an mBlox sales representative. However, under the terms of the Non-Exclusive Sales Representative Agreement between mBlox and S.D. Alexander ("Sales Representative Agreement" or "Agreement"), after termination, plaintiff is only entitled to commissions for Qualified Sales until the end of the "then current term" of mBlox's respective sales contracts with its clients. All of the sales contracts, while renewable, had definite "terms." Therefore, mBlox seeks summary judgment that any damages plaintiff is entitled to based on unpaid commissions cannot extend into perpetuity, and must be limited by the end of the "then current term" of each individual sales contract.

2.      Plaintiff's claim of entitlement to a never-ending stream of commissions on future sales to customers, even long after the end of any contractual relationship between the parties, asks this Court to render several provisions of the Sales Representative Agreement meaningless. One provision of the Agreement ties commissions to the continuing efforts of the plaintiff by barring commissions after the initial term of a sales contract unless there is an increase in business above the original invoicing. Under plaintiff's perpetual commissions theory, this provision has no meaning. Similarly, even if mBlox's clients that plaintiff brought under contract actually increased their purchasing of products or services in the future, that increase would be the result of the work of another sales representative or mBlox employee[s]. The Sales Representative Agreement

explicitly bars the payment of commissions to plaintiff for the sales that are the result of the work of other sales representatives or of mBlox directly.  Again, if the Court accepts plaintiff's perpetual commissions theory, the provision barring commissions for the work of others will be rendered meaningless, an outcome that is strongly disfavored by California law.

## STATEMENT OF FACTS

1.    **The Parties and the Sales Representative Agreement**

mBlox, formerly known as MobileSys, Inc. ("MobileSys"), is a Delaware corporation with its principle place of business located in Sunnyvale, California and London, England. mBlox provides short messaging services ("SMS") infrastructure and messaging transport ("MT") services to mobile phones and other wireless devices worldwide. (Complaint ¶¶ 7-9, A8-9.) Plaintiff is a Florida corporation that essentially serves as the vehicle for its principal, Mr. Alexander, to act as a salesperson in the communications services and software industries. (Complaint ¶ 1, A6.)

On April 1, 2003, MobileSys and the plaintiff entered a Non-Exclusive Sales Representative Agreement ("Sales Representative Agreement" or "Agreement"). (*See* Appendix in Support of Defendant mBlox, Inc.'s Motion for Partial Summary Judgment at A32-44.) Pursuant to the terms of the Agreement, Mr. Alexander was to provide non-exclusive sales representative services to mBlox's predecessor, MobileSys, Inc. beginning May 15, 2003 through May 15, 2004 and continuing thereafter unless terminated by the parties upon sixty days' notice. (Agreement § 14(A), A38.) Under the Agreement, plaintiff would market MobileSys services (which consisted of short message services, text messaging and paging delivery) to entities needing such services. (Agreement § 3(A), A34.) For the most part, these potential customers are content providers who want to send message traffic to mobile cellular telephones. MobileSys served as a conduit for such message traffic into the communications networks operated by the mobile telephone companies. (Complaint ¶¶ 7-8, A8.) mBlox performs the same function. (*Id.*)

4

In addition to marketing MobileSys (and subsequently mBlox) services to potential customers, Mr. Alexander was also to provide ongoing account management services "to enable purchasers and prospective purchasers to satisfactorily use the Products and Services in accordance with their particular needs." (Agreement § 3(E), A34.) Additionally, he was to provide written reports "submitted at least every month during the term of this Agreement" reflecting his assessment of "information essential to the marketing of Products and Services, in particular sales possibilities, pricing, trade statistics, competitive measures, and similar information" relating to the territory of the Agreement. (Agreement § 3(B), A34.)

Plaintiff was to be compensated for its services pursuant to paragraph six of the Sales Representative Agreement, which provides in pertinent part:

6.     Commissions

A.     During the term of this Agreement, Company shall pay to Sales Representative, for all services provided or expenses incurred by Sales Representative, commissions as a percentage of the Net Sales of each separate order for delivery of Products and Services into the Territory that results directly from the efforts of Sales Representative and which order Company accepted for shipment or delivery into the Territory, calculated as provided in Section 6(C) below ("Qualified Sales").

*     *     *

The Company shall pay no commission to Sales Representative with respect to Products and Services sold by or as a result of the efforts of other sales representatives or distributors of Company or with respect to Products and Services sold by Company directly, or for Products and Services provided, shipped or delivered out of the Territory.

(Agreement § 6(A), A35.) Section 6(C) sets the rate of commissions to be paid at fifteen percent of Net Sales. (*Id.* § 6(C), A35.) In addition, Section 6(D) requires that commissions be paid for "Subsequent New Business obtained by Sales Representative from customers with existing or prior Qualified Sales [at the same rate] set out in Section

6(C)" but specifically excludes from Qualified Sales a rebooking ("Repeat Business") of business "at the same or lesser level of invoiced amount following the initial contract term." (Agreement § 6(D), A35.)

## 2.    The Merger of MobileSys into mBlox and the Termination of the Agreement

In or about June 2003, MobileSys merged into mBlox, Inc., a larger entity engaged in a similar business of providing wireless networking services to the UK. (Complaint ¶ 36, A16.) After the merger, the new mBlox went through a period of reorganization in an attempt to synthesize and coordinate the operations of the two prior entities into the now-existing mBlox, Inc. For a variety of reasons that will be explained at trial, tensions rose between mBlox and plaintiff. Consequently, on or about December 16, 2003, mBlox terminated the Agreement prior to the expiration of the one year term and gave Plaintiff notice of such intent. (Complaint ¶ 67, A23.)

Following the notice of termination, mBlox offered to pay plaintiff continuing commissions for various Qualified Sales contracts that mBlox considered were connected to the efforts of the plaintiff. This litigation is the result of the parties' inability to reach an Agreement on the amount of commissions owed by mBlox to S.D. Alexander following that termination.

## 3.    Plaintiff's Windfall Damages Claim

The Sales Representative Agreement explicitly sets out what plaintiff was entitled to upon termination. According to the pertinent part of the Agreement:

> Following termination, Sales Representative will be entitled to payment on each existing Qualified Sales contract, if any, *until the expiration of the then current term* of each contract on which commissions would have been payable had this Agreement not been terminated, subject to the provisions of Section 6 of this Agreement.

(Agreement § 15, A39 (emphasis supplied).)  "Term" in the Sales Representative

Agreement is, therefore, given meaning through the various service contracts with mBlox

clients.

mBlox concedes that plaintiff is owed some amount of commissions pursuant to

Section 15 of the Agreement for certain clients.  For purposes of this motion, mBlox

seeks a ruling on seven specific clients:  1) 9 Squared, Inc., 2) Atlas Telecom Mobile, 3)

Clickatell (PTY) Ltd., 4) Mobyt, s.r.l., 5) SMS.ac, Inc., 6) Yellow Pepper, Inc., and 7)

Zingy, Inc.[2]  Plaintiff appears to assert that it is entitled to commissions on a broader list

of clients, and resolving plaintiff's entitlement to commissions for that broader list will

have to await resolution at trial.  However, resolution of the termination point of

plaintiff's entitlement to commissions from sales to these seven entities will significantly

reduce the scope of disagreement between the parties to this matter.

As a general matter, mBlox would first enter into a Master Services Agreement

with clients.  The Master Service Agreement would set forth the general obligations and

duties of the parties, but would not typically provide for any sales of particular products

and services.  The parties would subsequently enter into separate side agreements or

---

[2]    There is some question as to whether plaintiff is entitled to any commissions for contracts entered after the December 16, 2003 notice of termination.  Zingy, Inc. is an account that falls into this category, since no contract was in place until after December 16, 2003.  The same is true for certain subsidiary contracts to certain other of these seven customers.  Plaintiff disputes that the Sales Representative Agreement was effectively terminated on December 16, 2003 and thus claims rights to sales after that date.  However, for purposes of this motion, the appropriate termination date of the Sales Representative Agreement need not be determined.  mBlox had a right to terminate at least as of May 15, 2004, as the Agreement explicitly so provided.  (Agreement § 14(A), A38.)  The issue for resolution in this motion is simply what the "then current term" would be for certain revenue-generating contracts for purposes of determining a continuing entitlement to commissions under those contracts, a determination which can be made now regardless of whether that termination was effective on December 16, 2003 or at May 15, 2004.

addenda ("sales contracts") that would set forth the actual services purchased by the client, and the "term" of the individual sales contracts. All of these sales contracts contained provisions defining the current term of the contract as a certain period of time; none contained a definition of "current term" that was infinite.

During his deposition, Mr. Alexander made it clear that he believes he was entitled, at the point of termination of his Agreement with mBlox, to payments well beyond the "then current term" of the underlying sales contracts; he believes he is entitled to commissions into perpetuity. In his own words, Mr. Alexander believes he is entitled to commissions "forever." (Alexander Dep. at 26:12-27:22, A193-194.)

Plaintiff's vision of a potentially limitless damages award, a vision that is fundamentally at odds with both California law and a plain reading of the relevant contract language, necessitates this motion for partial summary judgment.

## ARGUMENT

I.    **FOR PLAINTIFF'S BREACH OF CONTRACT CLAIM, PLAINTIFF IS ONLY ENTITLED TO DAMAGES UNTIL THE END OF THE "THEN CURRENT TERM" OF THE QUALIFIED SALES CONTRACTS.**

A.    **Burden of Proof**

"A party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all *or any part* thereof." Fed. R. Civ. P. 56(b) (emphasis supplied).  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, the burden shifts to the non-moving party to produce specific facts that show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In the instant case, mBlox's motion for partial summary judgment deals with one discrete and straightforward issue:  the contractual limitations on any damages award for breach of contract.  There are no disputes as to any material facts relevant to this issue.  The relevant contractual provisions are unambiguous, and, therefore, may be interpreted by this Court without resorting to any extrinsic material.

### B.    California Law Requires Unambiguous Contracts to be Given Their Plain Meaning.

Under California law,[3] when interpreting the terms of a contract, a court endeavors to give effect to the mutual intentions of the parties. *Waller v. Truck Ins. Exchange, Inc.*, 900 P.2d 619, 627 (Cal. 1995); Cal. Civil Code § 1636. "Such intent is to be inferred, if possible, solely from the written provisions of the contract." *Waller*, 900 P.2d at 627 (quoting *AIU Ins. Co. v. Superior Court*, 799 P.2d 1253, 1264 (Cal. 1990)); *accord* Cal. Civil Code § 1639. Normally, the terms of the contract should be given their plain meaning according to their "ordinary and popular sense." *Waller*, 900 P.2d at 627; Cal. Civil Code § 1644. Furthermore, "[t]he whole of a contract is to be taken together, *so as to give effect to every part*, if reasonably practicable, each clause helping to interpret the other." Cal. Civil Code § 1641 (emphasis supplied).

"For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Cal. Civil Code § 3300. Furthermore, contract damages are limited to the benefit of the parties' bargain, Cal. Civil Code § 3358, and "[n]o damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin," Cal. Civil Code § 3301.

---

[3]    California law governs the interpretation of the Sales Representative Agreement. (Agreement § 24, A41.)

C.    The Plaintiff's Agreement with mBlox and the Service Contracts
      Between mBlox and its Customers Unambiguously Establish that
      Plaintiff Is Only Entitled to Commissions Until the End of the "Term"
      of the Qualified Sales Contracts with Clients.

During the following exchange from his deposition, Mr. Alexander made it clear

that he believes he is entitled to commissions into perpetuity on sales made to every

customer he signed with mBlox:

> Q.  But the way that the contract reads now with regard to how
> commissions will be paid following termination, you had input on?
>
> A.  Yes.
>
> Q.  And what is your understanding of the way -- of the nature of that
> provision?
>
> A.  Upon termination or expiration, I would continue to receive a revenue
> stream based on my commissions for each client that I brought to them, as
> well as any add-on services that mBlox provides these customers.
>
> Q.  What would the end point be?
>
> A.  There was no end point.
>
> Q.  Meaning it would continue forever?
>
> A.  Yes.
>
> Q.  So say that the contract was terminated on May 15th at the end of the
> original contract term, your contract.  And -- just pulling one off the top of
> my head, 9 Square, for instance, ten years later, you're not
> working for mBlox.  You'd still be entitled to commission?
>
> A.  Correct.
>
> Q.  And say that that contract that MobileSys has with 9 Square, you're
> terminated on the 15th of May, 2004, at the end of your term, and there are
> add-ons that are negotiated and signed by another sales rep that's been
> assigned to that contract.  Are you entitled to commissions on those add-
> ons as well?
>
> A.  Correct.

Q.  And what's the basis for that?

A.  The contract.

Q.  What provisions in particular?

A.  I don't know.

Q.  But the language of the contract would provide you that ability?

A.  Yes.

(Alexander Dep. 26:12-27:22, A193-94.)

In fact, Mr. Alexander's contention that he is entitled to commissions *forever* is fundamentally at odds with the plain language of the Agreement.  According to the Agreement:

> Following termination, Sales Representative will be entitled to payment on each existing Qualified Sales contract, if any, *until the expiration of the then current term* of each contract on which commissions would have been payable had this Agreement not been terminated, subject to the provisions of Section 6 of this Agreement.

(Agreement § 15, A39 (emphasis supplied).)  Each of the relevant service Agreements has a "term" provision that unambiguously shows that the "then current term"[4] is a date certain.

### 1.     9 Squared, Inc.

On May 29, 2003, MobileSys and 9 Squared, Inc. entered into a Master Service Agreement.  (A46-49.)[5]  On the same date, the parties entered into a Network Services Agreement.  (A75-76.)  A provision of the Network Services Agreement explicitly

---

[4]      The language "then current term" carries with it the clear implication that it references a finite period.  The identification of the "current" term contemplates additional terms either before or after the "current term" or both.

[5]      On November 29, 2004, mBlox entered into a subsequent Master Services Agreement with 9 Squared, Inc.  (A51-73.)

defines the term of the Agreement.  The relevant section of the Network Services
Agreement provides:



Under California law, when at all possible, meaning must be given to all terms of
a contract.  Cal. Civil Code § 1641.  This is not an instance where the Court must strain to
find meaning to a vague provision, or resort to any sort of extrinsic material to define a
term.



## 2.    Atlas Telecom Mobile

mBlox and Atlas Telecom Mobile entered into a SMS Services Agreement on
August 14, 2003.  (A78-86.)

13

 The pertinent

provision provides:

No logical reading of the above provision could make the "term" infinite.

### 3.    Clickatell (PTY) Ltd.

MobileSys and Clickatell entered into a Master Agreement on April 8, 2003.

(A98-100.)   On the same date, Clickatell and MobileSys agreed to a Network Services

Agreement.  (A102-103.)  Specifically,

"term" is defined as:



(A103. (emphasis supplied).)  Again, the "then current term" of the Sales Representative

Agreement is defined by the "then current-term" set forth in this Network Services

Agreement.  Put simply, the "then current term" is a finite period. 

On April 10, 2003, Clickatell and MobileSys also entered into a SMS Services

Agreement.  (A105-110)  The "term" provision of this Agreement states:



### 4.    Mobyt, s.r.l.

On June 19, 2003, MobileSys and Mobyt entered into both a Master Services

Agreement and a Network Services Agreement.  (A112-118.)  The provision dealing with

the Network Services Agreement's term provides:



### 5.    SMS.ac Inc.

On July 8, 2003, mBlox and SMS.ac entered into a SMS Services Agreement. (A120-122.)  The term provision of that Agreement provides:



### 6.    Yellow Pepper, Inc.

mBlox and Yellow Pepper entered into a Master Service Agreement (A150-154) and a Network Services Agreement on August 5, 2003 (A156-158).



MBlox and Yellow Pepper also entered into a UK Premium SMS Services Agreement on January 26, 2004.  (A160-170.)  The term, according to that Agreement, is as follows:



7.    **Zingy, Inc.**

Zingy and mBlox agreed to a Master Services Agreement (A172-176) and an

SMS Services Agreement (A178-186).  The section of the SMS Services Agreement

dealing with the definition of "term" provides:



(A179.)  Again, as with all of the Agreements, term is defined as a precise, definite, and

finite number.

mBlox also entered into a Service Addendum with Zingy.  (A188-189.)

II.    **INTERPRETING THE AGREEMENT AS A WHOLE ESTABLISHES THAT PLAINTIFF IS NOT ENTITLED TO COMMISSIONS IN PERPETUITY–ANY OTHER OUTCOME WOULD RENDER A VARIETY OF PROVISIONS MEANINGLESS.**

Not only does the unambiguous termination provision in the Sales Representative Agreement bar any commissions after the end of the "then current term" of the underlying sales contracts, other portions of the contract confirm that plaintiff would not have been entitled to commissions into perpetuity.

Under California law, "[t]he whole of a contract is to be taken together, *so as to give effect to every part*, if reasonably practicable, each clause helping to interpret the other." Cal. Civil Code § 1641 (emphasis supplied). However, if this Court accepts the argument that plaintiff is entitled to commissions forever, the Court will be forced to render several provisions of the Sales Representative Agreement meaningless.

Under plaintiff's unreasonable reading of the Agreement, plaintiff would forever "continue to receive a revenue stream based on my commissions for each client that I brought to them, as well as any add-on services that mBlox provides these customers." (Alexander Dep. at 26:18-21, A193.) Such a statement is fundamentally at odds with Section 6 of the Agreement, which provides:

> Subsequent New Business obtained by Sales Representatives from customers with existing or prior Qualified Sales, shall be paid at the rates set out in Section 6(C) of this Agreement. Subsequent New Business is measured as the contracted increase in Net Sales above the previous or existing contract with such customer. Repeat Business, defined a [sic] rebooking of business at the same or lesser level of invoiced amount following the initial contract term, is not Qualified Sales, and commissions will not be paid on Repeat Business.

(Agreement § 6(D), A35.) The Agreement further provides:

18

> The Company shall pay no commission to Sales Representative with
> respect to Products and Services sold by or as a result of the efforts of
> other sales representatives or distributors of Company or with respect to
> Products and Services sold by Company directly, or for Products and
> Services provided, shipped or delivered out of the Territory.

(Agreement § 6(A), A35.) These provisions, read together, show the logical flaw with

Mr. Alexander's contention that he is entitled to commissions into perpetuity. After the

initial term on an underlying, the Sales Representative was entitled to *no* commissions on

repeat business at the "same or lesser level of invoiced amount." (*Id.* § 6(D), A35.)

Therefore, even if plaintiff was still a sales representative, when sales to a particular

customer remained at the original level, plaintiff would not be entitled to any further

commission.

    This in turn raises the question: what if one of the clients plaintiff serviced while a

sales representative actually does increase its purchasing after plaintiff was terminated?

There is no doubt how plaintiff would answer this question:

> Q.  So say that the contract was terminated on May 15th at the end of the
> original contract term, your contract. And -- just pulling one off the top of
> my head, 9 Square, for instance, ten years later, you're not
> working for mBlox. You'd still be entitled to commission?
>
> A.  Correct.

(Alexander Dep. at 27:2-8, A194.) However, that answer cannot be reconciled with a

plain reading of the Agreement. If ten years after the termination of the Sales

Representative Agreement there was an increase in business from 9 Squared, either a

different sales representative or mBlox directly would be serving as the account manager

and servicing that client. Mr. Alexander would not be performing the account servicing

functions contemplated under the Agreement with respect to such client. (Agreement §

3(E), A34; *see also* Alexander Dep. at 123-26, A 195-198 (confirming that Mr.

19

Alexander invested time as an account manager to keep his accounts "happy," and was compensated for such services through commissions).) Because plaintiff would not be servicing that client in ten years, plaintiff would not be entitled to a continuing commission because any growth in the level of sales would be "Products and Services sold by or as a result of the efforts of other sales representatives or distributors of Company or . . . Products and Services sold by Company directly. . . ." (Agreement § 6(A), A35.)

Quite frankly, plaintiff's claim of entitlement to perpetual commissions renders the term and termination provision of the Agreement substantively ineffective. mBlox contracted for the right, after making appropriate commission payments, to terminate its relationship with Mr. Alexander. (*See* Agreement § 15, A39.) Plaintiff's perpetual commissions theory turns Section 15 on its head. In effect, assuming the clients that plaintiff serviced remain with mBlox, mBlox will never be able to terminate its obligations to Mr. Alexander. Moreover, the perpetual commissions theory is actually much worse for mBlox than a life-long contract with no possibility of termination. At least in a contract with no rights of termination, mBlox would get something in return for continued payments; it would get plaintiff's continued services. Under plaintiff's perpetual commissions theory, mBlox gets an ongoing burden, commission payments, with no benefit.

Even though commissions were only to accrue from sales that "result[] directly from the efforts of Sales Representative," (Agreement at § 6(A), A35), and not someone else's efforts (*id.*), and even though the parties contemplated that Mr. Alexander would provide ongoing account management services to grow the business (Agreement at §

3(E), A34), and that mere "repeat business" was not supposed to generate any further commission (Agreement at § 6(D), A35), plaintiff nonetheless believes his commission checks should continue with no further effort on his part -- even decades after making the phone calls or e-mails that initiated the business.

Common sense instructs that plaintiff's perpetual commissions theory is logically flawed; the contract terms, interpreted pursuant to California law, instruct that it is legally unsupportable.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant mBlox, Inc.'s

Motion for Partial Summary Judgment.


MORRIS, JAMES, HITCHENS & WILLIAMS LLP

_____

Matthew F. Lintner (#4371)
Amy A. Quinlan (#3021)
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19899
(302) 888-6800
Attorneys for Defendant mBlox, Inc.


OF COUNSEL

COOLEY GODWARD LLP
Craig Daniel
One Maritime Plaza
20th Floor
San Francisco, CA 94111-3580
(415) 693-2000

Dated: April 22, 2005

## CERTIFICATE OF SERVICE

I, Matthew F. Lintner, hereby certify that on this 29th day of April, 2005, I caused

to be electronically filed the public version of Defendant mBlox, Inc.'s Opening Brief in Support

of Motion for Partial Summary Judgment with the Clerk of the Court using CM/ECF, which will

send notification of such filing to the following:

John M. LaRosa, Esquire
Law Office of John M. LaRosa
Two East 7th Street, Suite 302
Wilmington, DE  19801


Additionally, I caused to be hand delivered two copies of the public version of

Defendant mBlox, Inc.'s Opening Brief in Support of Motion for Partial Summary Judgment to

the following:

John M. LaRosa, Esquire
Law Office of John M. LaRosa
Two East 7th Street, Suite 302
Wilmington, DE  19801


Matthew F. Lintner (#4371)
Amy A. Quinlan, Esquire (#3021)
MORRIS JAMES HITCHENS & WILLIAMS LLP
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
302.888.6800
mlintner@morrisjames.com
aquinlan@morrisjames.com
Attorneys for Defendant mBlox, Inc.

1162908